### A09A0982. LEE v. PHOEBE PUTNEY MEMORIAL HOSPITAL, INC. et al.
#### (678 SE2d 340)

BLACKBURN, Presiding Judge.

In this medical malpractice action, Spaneasha Lee appeals the grant of summary judgment to Phoebe Putney Memorial Hospital (the "Hospital") and its employee Shelby Adams. Lee argues that some evidence showed that the Hospital and Adams negligently caused Lee to suffer burns from scalding water. We agree with Lee and therefore reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

So viewed, the evidence shows that in August 2004, Lee was experiencing extreme nausea and other problems associated with her pregnancy and was admitted to the Hospital for care. Diabetic from childhood, Lee also suffered from neuropathy caused by the diabetes, which meant that she often could not feel heat or pain. On August 23 at 9:15 a.m., obstetrical nurse Adams (an employee of the Hospital) administered a medication (Phernegan) to Lee via an IV to treat the nausea, which medication had the well-known side effect of causing drowsiness for up to six hours. Per doctor's orders, nurse Adams at

---

[11] *Danforth v. Bulman*, 276 Ga. App. 531, 537 (2) (623 SE2d 732) (2005).

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

1:06 p.m. administered a second nausea medication (Reglan) to Lee via an IV, which medication also caused drowsiness and could cause the patient to become stuporous. The combination of these two medications was known to cause even more drowsiness.

While under the influence of these medications, Lee became very drowsy and so informed nurse Adams. Nevertheless, nurse Adams insisted that Lee take a shower and assisted her to the shower stall, where she placed Lee on a shower chair with a back, turned on the water and tested it, placed the removable shower nozzle in Lee's hand, and then left. Lee immediately fell asleep in the shower chair while the water sprayed her inner thigh area, in which position Lee remained asleep until nurse Adams appeared an hour later to exclaim, "Oh, my God. I didn't know the water could get this hot." Nurse Adams helped the groggy Lee out of the shower and returned her to the bed, where a doctor determined that Lee had suffered severe burns on her inner thighs from the hot water.

Lee sued the Hospital and nurse Adams for medical malpractice, attaching an affidavit from an experienced obstetrical nurse that nurse Adams had acted negligently and had violated the nursing standard of care by leaving a diabetic patient suffering from neuropathy in a hot shower for an hour after having administered medications to her that caused pronounced drowsiness. Contending that the qualifications of Lee's expert nurse did not meet the standards of OCGA § 24-9-67.1, the Hospital and nurse Adams moved to exclude the expert's testimony at trial and further moved for summary judgment, arguing that the expert's qualifications were inadequate and that no evidence showed that the hospital or nurse Adams acted negligently or that their negligence caused harm to Lee. The trial court entered summary judgment in favor of the defendants without explanation, noting as an aside that the defendants had challenged the adequacy of the expert's qualifications. Lee appeals.

1. The parties argue the qualifications of plaintiff's expert nurse at length, but such is irrelevant in this procedural context. As in *Roberts v. Nessim*,[2] the trial court in fact made no ruling on the qualifications of plaintiff's expert. Although the court noted that defendants were challenging those qualifications, "the trial court did not actually state a rationale or ruling on this issue. Thus, [this issue] presents no basis for [appellate review]." Id. And, as in *Roberts*, we cannot apply the "right for any reason" rule and rely upon the expert's alleged lack of qualifications under OCGA § 24-9-67.1 so as to affirm the trial court's grant of summary judg-

---

[2] *Roberts v. Nessim*, 297 Ga. App. 278, 281 (1) (a) (i) (676 SE2d 734) (2009).

ment. "Pretermitting whether [the plaintiff's expert] was qualified to render [her] opinions in this case, the issue is not properly before us, given the trial court's failure to rule on this issue, the standard of review, and the language of the statute."[3] *Roberts*, supra, 297 Ga. App. at 281 and n. 4.

Moreover, even if the trial court had ruled the expert's testimony inadmissible under OCGA § 24-9-67.1, we would have been hard-pressed to affirm such. The undisputed evidence showed that during four of the five years immediately preceding October 23, 2004, this expert had actively and regularly practiced as a licensed nurse on a full-time basis in supervising and directly performing the very obstetrical nursing services on which she was rendering her opinion. See OCGA § 24-9-67.1 (c) (2) (A). Furthermore, during those same four years, she was employed as a member of the faculty of two educational institutions (accredited in the teaching of the nursing profession) in teaching nursing students how to render the treatment which was alleged to have been rendered negligently here. See OCGA § 24-9-67.1 (c) (2) (B). Thus, for two separate and independent reasons under the statute, she would appear to have been undisputedly qualified to render her opinion.

2. At least some evidence supports a finding that the Hospital through its employee nurse Adams negligently provided substandard medical care to Lee, which caused her severe burns. Thus, the trial court erred in granting summary judgment to the defendants.

> A private hospital is under the duty to exercise such reasonable care in looking after and protecting a patient as the patient's condition which is known to the hospital through its agents and servants charged with the duty of looking after and supervising the patient may require. This duty extends to safeguarding and protecting the patient from any known or reasonably apprehended danger from

---

[3] See *Nathans v. Diamond*, 282 Ga. 804, 806, n. 8 (654 SE2d 121) (2007) (a trial court's finding regarding an expert's qualification made following a pretrial hearing "will only be reversed on appeal if the trial court abused its discretion in making its ruling"); *MCG Health, Inc. v. Barton*, 285 Ga. App. 577, 580 (1) (647 SE2d 81) (2007) ("[t]he issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion") (punctuation omitted); OCGA § 24-9-67.1 (c) (2) (A) (in a medical malpractice action, the opinions of an expert are admissible if the expert was licensed in his or her profession and had "actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in . . . [t]he active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, *as determined by the judge*, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue") (emphasis supplied).

YALE LAW LIBRARY

himself which may be due to his condition, and to use ordinary and reasonable care to prevent it.

(Punctuation omitted.) *Johnson v. Parnes.*[4] See *Doctors Hosp. of Augusta v. Poole.*[5] *Johnson* went on to emphasize that "[e]xcept in plain, palpable, and indisputable cases, questions of negligence are solely for jury determination." (Punctuation omitted.) Supra, 163 Ga. App. at 405.

Here, some evidence showed that the Hospital and nurse Adams knew of Lee's diabetic condition and her resulting neuropathy, and they certainly knew of her receiving the doses of the drowsiness-inducing drugs Phernegan and Reglan inasmuch as nurse Adams had administered these medications to Lee. Moreover, Lee expressly announced to nurse Adams that she was drowsy. Plaintiff's expert testified that the Hospital and its employee Adams violated the nursing standard of care by putting this groggy patient who could not feel heat in a hot shower prepared by nurse Adams and by leaving her there unattended for an hour. Lee confirmed that she immediately fell asleep and did not awake (nor in any way adjust the water's temperature) until nurse Adams returned an hour later and expressed her dismay at the excessive hotness of the shower's water. Lee also presented evidence that the Hospital's plumbing system did not have "anti-scald" devices to prevent scalding water from reaching the shower in question and that in fact hospital maintenance logs showed excessively hot water to have often reached this area of plumbing in the Hospital. Beyond nurse Adams's own testimony that she saw Lee's burns upon removing Lee from the shower, the treating physician who also saw Lee's burns immediately after she was taken from the shower testified that he had no "doubt that [Lee] was actually burned from the water in the shower." Because Lee presented some evidence showing negligence, causation, and damages, the trial court erred in granting summary judgment to the defendants. See *Johnson*, supra, 163 Ga. App. at 405-406; *Chapman v. St. Francis Hosp.*[6]

*Judgment reversed. Adams and Doyle, JJ., concur.*

DECIDED MAY 5, 2009.

*Laura M. Shamp*, for appellant.

---

[4] *Johnson v. Parnes*, 163 Ga. App. 404, 405 (294 SE2d 624) (1982).
[5] *Doctors Hosp. of Augusta v. Poole*, 144 Ga. App. 184, 184 (1) (A) (241 SE2d 2) (1977).
[6] *Chapman v. St. Francis Hosp.*, 156 Ga. App. 5, 6 (274 SE2d 62) (1980).

*Langley & Lee, Carl R. Langley*, for appellees.